## KRUSZEWSKI v. UNITED STATES.
### No. 9347.

Circuit Court of Appeals, Seventh Circuit.
Oct. 13, 1947.

John V. Clinnin, of Chicago, Ill., for appellant.

Otto Kerner, Jr., and J. Albert Woll, U. S. Attys., and William S. White and John P. Lulinski, Asst. U. S. Attys., all of Chicago, Ill., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This appeal is from a judgment in favor of the Government (defendant) in an action by plaintiff, an employee of the United States Treasury Department, to recover in the amount of $680.68. The Government, on January 22, 1944, by its General Accounting Office certified that plaintiff had been overpaid $700.90, and that after crediting him with $20.22 there was due the United States the sum of $680.68. This money, after demand by the Government, the plaintiff refused to repay. The Government thereupon proceeded to accomplish its collection by a set-off of the amount against sums otherwise admittedly due the plaintiff.

The primary issue for decision is whether the Government on January 22, 1944 was empowered to revise a claim which had theretofore been allowed and paid to the plaintiff and to determine that it was an overpayment. There is the further issue to be decided only in the event that the primary issue is decided in favor of the Government as to whether the Government had a right to set off the overpayment against monies otherwise due the plaintiff.

In view of the conclusion which we have reached, there is no occasion to relate in

detail the facts out of which the instant controversy originated and which the Government alleges resulted in an overpayment to the plaintiff. Briefly, plaintiff, who was stationed in Berlin, Germany, as the Treasury representative of the Bureau of Customs, received during certain periods in 1933 and 1934 checks from the Government as salary and allowances totaling the sum of $1,700.71. During that period and subsequently, there was an appreciation of the German mark in relation to the American dollar, by reason of which losses were sustained by employees of the United States located in that country.

The President of the United States, on March 26, 1934, approved an Act, 5 U.S.C. A. § 118c, which provides: "There are authorized to be appropriated annually such sums as may be necessary to enable the President, in his discretion and under such regulations as he may prescribe * * * upon recommendation of the Director of the Budget, to meet losses sustained on and after July 1, 1933, by officers, enlisted men, and employees of the United States while in service in foreign countries due to the appreciation of foreign currencies in their relation to the American dollar * * *. Provided, That such action as the President may take shall be binding upon all executive officers of the Government * * *." Pursuant to the authority thus conferred, the President on March 27, 1934 issued an executive order, No. 6657-A, fixing a basis for the computation of such losses.

It was the method or formula to be applied in determining such losses which forms the basis of this controversy. In 1937, the statute and executive order were interpreted in favor of the plaintiff and as a result his claim was allowed. In 1944, long after plaintiff's claim had been allowed and paid, the Government reviewed its prior action, disallowed the claim and sought to recover from the plaintiff. In our view, the action of the Government in 1944 in revising and determining that the claim had previously been erroneously allowed was unauthorized. It therefore becomes unnecessary to enter any discussion of the merits of the claim or whether the Government in the first instance erroneously interpreted plaintiff's rights under the statute and regulation.

The Acting Comptroller General by a certificate of settlement dated December 3, 1937 certified that the sum of $700.90 was due the plaintiff. On January 26, 1938, the President transmitted to Congress for its consideration, in compliance with 5 U.S.C. A. § 266, a schedule of claims listing the allowed claims of employees of the Treasury Department arising out of losses sustained by the appreciation of foreign currencies, which schedule specifically included the name of the instant plaintiff and the amount theretofore found due him by the Acting Comptroller General. The President's communication to Congress shows that the claims listed in the President's message, including that of the plaintiff, had been approved by the Bureau of the Budget as well as by the Treasury Department.

The President's message was incorporated in House Document No. 498, 75th Congress, 3rd Session, received by the Speaker of the House, introduced in the House and referred to the Committee on Appropriations. The First Deficiency Appropriations Act for the fiscal year 1938 appropriated the sum of $700.90 for the purpose of paying plaintiff's claim (52 Stat. 85, 89). The claim was paid to plaintiff by the Government's voucher dated March 21, 1938.

On January 4, 1939 plaintiff wrote a letter to the General Accounting Office requesting a refund of $20.22 which had previously been disallowed. The General Accounting Office allowed this claim, and on January 22, 1942, the Comptroller General by a certificate of settlement certified that plaintiff had been overpaid $700.90, and that after crediting him with $20.22 there was due the Government $680.68. (This is the amount which the Government has set off against other monies owing the plaintiff by the Government and the amount which the plaintiff seeks to recover in this suit.)

■ The first question we reach is whether the Government or any of its officials under the circumstances shown had any authority after the payment of plaintiff's claim on March 21, 1938 to revise or reverse its former finding that the amount

was properly owing to the plaintiff. The Government makes a plausible argument that the claim was allowed in the first instance by mistake. If so, it was a mistake in interpretation of the statutory provision and the executive order issued pursuant thereto as to the method properly employable in determining the amount of plaintiff's loss. The Government, upon the premise that a mistake was made, relies upon a number of cases which sustain the long established rule that the Government is not bound by a mistaken construction of an Act of Congress made by one of its officials and may recover money paid out under such construction. We think it is unnecessary to cite or discuss these cases for the reason that the rule is without application to the facts of the instant situation. Here we have a situation where plaintiff's original claim was found to be valid by the Comptroller General and other governmental agencies, presented to the President as such and communicated to Congress with the request that money be appropriated for its payment. This was done by Congress, which, in our opinion, amounted to a final adjudication, making the claim immune from further revision or disallowance by the Comptroller General or any agency of the Executive Department.

We think this view is supported by the cases. In United States v. Price, 116 U.S. 43, 6 S.Ct. 235, 236, 29 L.Ed. 541, the court considered a situation quite similar to the instant one and decided adversely to the government. There, a suit had been brought to recover a sum of money collected by one Price from the United States on a claim "for property and supplies taken * * * for the use of the armies of the United States during the war of the rebellion." There, as here, Congress had made the necessary appropriation for the payment of the claim. The court, in denying the Government's right to recover, stated at page 44 of 116 U.S., at page 236 of 6 S. Ct., 29 L.Ed. 541: "It may be that congress required the payment to be made under a mistake, or that the claim was not a just one, but until congress abrogates the law, or directs suit to be brought to recover back the money, the conclusive presump-

tion is that there was no mistake, and that Price is under no obligation to pay back what he has received."

In United States v. Louisville, 169 U.S. 249, 18 S.Ct. 358, 42 L.Ed. 735, the court announced a similar principle. The court stated at page 253, of 169 U.S., at page 360 of 18 S.Ct., 42 L.Ed. 735: "When the decision of these officials was by the secretary of the treasury reported to congress, and an appropriation made by that body in 1891 of the specific sum mentioned in the report, with directions to pay the amount thus appropriated to the city of Louisville, the time for examination had passed, and it was the duty of the proper officers of the government to pay the money as directed by the statute."

█ The Government, in support of its position, relies strongly upon Title 31 U.S. C.A. § 71, which provides: "All claims and demands whatever by the Government of the United States or against it, and all accounts whatever in which the Government of the United States is concerned, either as debtor or creditor, shall be settled and adjusted in the General Accounting Office."

We think this provision is of no benefit to the Government under the circumstances of the instant case. Especially is this so when taken in connection with Title 31 U. S.C.A. § 74, which provides in part: "Balances certified by the General Accounting Office, upon the settlement of public accounts, shall be final and conclusive upon the Executive Branch of the Government, except that any person whose accounts may have been settled, the head of the Executive Department, or of the board, commission, or establishment not under the jurisdiction of an Executive Department, to which the account pertains, or the Comptroller General of the United States, may, within a year, obtain a revision of the said account by the Comptroller General of the United States, whose decision upon such revision shall be final and conclusive upon the Executive Branch of the Government."

While the record does not show when plaintiff's claim was first certified as correct by the General Accounting Office, it must have been some time prior to Decem-

ber 3, 1937, when it was certified as correct by the Acting Comptroller General. The claim was actually paid to plaintiff March 21, 1938. In any event, it was not until January 22, 1942 that the Comptroller General decided that the claim had been paid by mistake and demanded its repayment. On its face, this action of the Comptroller General appears to have been in direct contravention of the provision lastly quoted, which limits to one year his authority to revise a claim such as that here involved.

The Government, however, attempts to escape this limitation period by contending that plaintiff's letter of January 4, 1939, requesting a refund of $20.22 previously disallowed, had the effect of reopening the entire matter, and upon this premise it is further contended that the Comptroller General was authorized to disallow that which had been previously allowed and paid to the plaintiff. Again, we think the Government's contention is not tenable. The fact is, as we understand the record, that plaintiff's claim for $20.22 which had been previously disallowed was found to be valid by reason of an enactment of Congress passed subsequent to the submission of his original claim to the General Accounting Office. Referring to this $20.22 claim, the Government in its brief states: "These losses not covered by the original statute were made reimbursable by the Amendment of August 14, 1937." In other words, Congress created a right not theretofore existing and it was upon this right that plaintiff's claim of January 4, 1939 was founded. Such being the case, we think it was a separate and independent claim even though it sprang from the same situation which formed the foundation for the original claim. See United States v. Louisville, supra, 169 U.S. 249, at pages 254, 255, 18 S.Ct. 358, 42 L.Ed. 735. Furthermore, the one year limitation period was also applicable to the plaintiff and if this claim was merely a part of the original claim, as now argued by the Government, it is difficult to perceive why the Comptroller General took jurisdiction and how its allowance can be justified. The fact that the Comptroller General took jurisdiction indicates that he regarded it as a new claim

to which the one year limitation period had no application.

The judgment is reversed, with directions to enter a judgment for the plaintiff in the amount of $680.68, together with interest and cost of suit.